# Rankin & Taylor

**Attorneys at Law**

_____

11 Park Place, Suite 914                                    David @DRMTLaw.com
New York, New York 10007                           Phone: 212-226-4507
                                                                     Fax: 212-658-9480

**VIA ECF ONLY**

April 11, 2014


The Hon. Deborah A. Batts
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

       **Re:**    **Rafael Castro v. The City of New York,** *et al.*
              **11-CV-7856 (DAB)**

Your Honor:


Our office represents the plaintiff in the above-referenced matter. We come before Your Honor seeking an order compelling production of documents and depositions. We have discussed these matters at length with the defendants and have been unable to come to a resolution. The application contained in this letter is addressed to Your Honor because we understood the Court's Order of March 23, 2014 to have only assigned a specific discovery dispute to Magistrate Judge Pitman.

<u>Production of Documents</u>

In response to plaintiff's second set of discovery requests, served on August 30, 2013, the defendants responded by producing a privilege log, attached as Exhibit 1, that referred to and withheld documents designated DEF912-952, which the defendants represent to be a power Point Presentation on how Emergency Service Units ("ESU") of the New York City Police Department ("NYPD") are trained to execute search warrants and how they are trained to use ballistics shields.

Discovery is only to be limited when "sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir.1992). Moreover, in civil rights cases, limitations on discovery are to be narrowly construed in light of the "important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *Crosby v. City of New York*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (*quoting King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)).

Hon. Judge Batts
April 11, 2014
Page 2 of 4

Training materials are discoverable evidence in police misconduct cases because they bear on a potential qualified immunity defense as well as factoring into a punitive damage assessment. *Ricciuti v. New York City Transit Auth.*, 796 F.Supp. 84, 88 (S.D.N.Y.1992) ("the officers could claim a good faith, qualified immunity based in part on improper or inadequate training."); *Lee v. Edwards*, 101 F.3d 805, 811(2d Cir. 1996) (finding that a substantial punitive damage award was warranted in a 42 U.S.C. § 1983 action against a police officer for assault and battery and malicious prosecution where, "although the criminal and civil penalties for comparable conduct are middling, [the defendants'] training as a police officer provided him with some notice of the gravity of his conduct"). When the courts have looked at document requests for training materials of police officers they have required their production. *Velez v. The City of New York*, 2004 Civ. 1775 (ENV) (MDG), 2010WL2265443, *2 (E.D.N.Y. June 2, 2010)(requiring the production of training materials).

Defendants know the training materials are relevant, so they did the only thing available to them and erroneously asserted the documents were covered by the law enforcement privilege. Merely assuring the law enforcement privilege does not end the discussion. *In re the City of N.Y.,* 607 F.3d 923, 940 (2d Cir.2010) ("[T]he law enforcement privilege is a *qualified* privilege, not an absolute privilege, [thus] there are circumstances in which information subject to the privilege must nevertheless be disclosed.")(italics in original). The party asserting the law enforcement privilege bears the burden of showing the privilege applies to the documents in question. *Id.*, at 944.

In order to properly invoke any privilege, the defendants must first "specify 'which documents or class of documents are privileged and for what reasons' in the form of a 'declaration or affidavit.'" *Malsh v. New York City Police Dep't*, 92-CV-2973, 1995 WL 217507, *3 (S.D.N.Y. Apr. 11, 1995) (quoting *King*, 121 F.R.D. at 189). While the defendants did provide what they describe as a privilege log, it fails to meet the requirement of Fed.R.Civ.P 26(b)(5) or Local Rule 26.2(b) because we cannot adequately assess the basis for the privilege asserted. Moreover, the procedure described in *King* requires that the affidavit be submitted "from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *King*, 121 F.R.D. at 189 (citation omitted). Further there is no showing of the specific harm threatened by the disclosure. *Schiller v. City of New York*, 252 F.R.D. 204, 207 (S.D.N.Y., 2008). Here, defendants have not complied with these procedures so that the Court is unable to test any legitimate invocation of privilege.

Hon. Judge Batts
April 11, 2014
Page 3 of 4

Once the party seeking to invoke the law enforcement privilege has met their burden, the court must conduct a balancing test considering the following factors:

1) whether the suit is not frivolous and brought in good faith;
2) whether the information sought is not available through other sources; and
3) whether the information is important to the party's case.

*In re the City of N.Y.*, at 945

Mr. Castro easily makes these showings. This case is not frivolous. Mr. Castro suffers from a post-traumatic seizure disorder caused from the trauma of Detective Hendrix hitting him in the face with a police ballistics shield. The content of the Power Point presentation is, according to the defendants, the only training materials that ESU have before they are given M5s (machine guns), riot gear, ballistic shields, and are tasked with executing residential search warrants across the City of New York. The specific document requests seek documents related to the training on the execution of search warrants and how to use ballistic shields, but defense counsel has asserted these are the only training materials used in connection with training an ESU officer. Therefore, this information cannot be gathered from any other source. Merely asking the officers about their training is insufficient because it is their deviation from the training that gives rise to Mr. Castro's ability to argue the officers are not entitled to qualified immunity and should be the subject of a punitive damage award, not the officers' understanding of that training.

<u>Additional Depositions</u>

On March 31, 2014 our office noticed the depositions of Detective ("Dt.") Maldonado, Dt. Cordova, P.O. McKenna, Dt. Schultz, Lieutenant ("Lt.") Lee, and P.O. Mascheiti.  These notices and the transmittal letter are attached as Exhibit 2.  The defendants have said that they will not produce these witnesses absent a court order allowing Mr. Castro to depose a greater number of people than contemplated by Fed.R.Civ.P 30 (a) (2) (A) (i).

The applicable standard is stated by Magistrate Judge Francis as follows: "The court must grant a request to exceed ten depositions unless the additional depositions would be unreasonably cumulative or duplicative, the requesting party had a prior opportunity in discovery to obtain the information sought, or the burden or expense of additional depositions would outweigh any likely benefit." *In re Weatherford International Securities Litigation*, 11 Civ. 1646(LAK)(JCF), 2013 WL 5762923, *2 (S.D.N.Y, Oct. 24, 2013).

Hon. Judge Batts
April 11, 2014
Page 4 of 4

Mr. Castro seeks depositions of the following employees of the defendant, City of New York, Lt. Lee's deposition is required for a number of reasons.  He was the special operations lieutenant who was the entry supervisor on the day Mr. Castro was injured and the highest ranking officer on the scene.  As the highest ranking officer, he has operational responsibility for everything that happened on the day of the incident. Additionally, Lt. Lee was the individual who prepared the search warrant execution plan.

Dt. Maldonado was the tactical medic on the ESU team and was on the scene when Mr. Casto was injured.  It would have been Mr. Maldonado's job to treat Mr. Casto.  We require his testimony because the previously deposed officers have stated they know of no treatment that may have been given to Mr. Castro in his apartment.

P.O. McKenna and P.O. Mascheiti escorted Mr. Castro from his apartment to the hospital and then presumably to the police precinct.  We require their depositions because they are the only witnesses to Mr. Castro's injuries after he left the apartment and was transported to the hospital and because none of the officers deposed thus far have admitted seeing any injury to Mr. Castro while he was in his apartment.

Dt. Cordova and Dt. Schultz were members of ESU team that entered Mr. Castro's apartment.  Their depositions are required in light of the fact that none of the ESU officers deposed thus far have admitted seeing any injury to Mr. Castro while in his apartment.  All the depositions sought are of individuals who were actually present when Mr. Castro was injured.  Given the forgoing, we respectfully request the relief sought herein.

We thank the Court for its consideration of this matter.

Respectfully submitted,

David B. Rankin

DBR/
Exhibits
cc:     Client (*via first-class mail*)
        Assistant Corporation Counsel, Liza Sohn *(via ECF)*
        Co-counsel for plaintiff, Michael L. Spiegel *(via Hand Delivery)*