```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

RAFAEL CASTRO,                          :

                 Plaintiff,             :    11 Civ. 7856 (DAB)(HBP)

     -against-                          :    ORDER

THE CITY OF NEW YORK, et al.,           :

                 Defendants.            :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I write to resolve the discovery disputes addressed by the parties in their letters dated April 8, 11, 14 and 24, 2014.[1]

I. Plaintiff's Allegations

This is a Section 1983 action in which plaintiff alleges that he sustained injuries as a result of excessive force used against him in the course of his arrest by members of the New York City Police Department on October 29, 2009. Specifically, plaintiff alleges that during the early morning hours of October 29, 2009, plaintiff, his girlfriend and his mother were all asleep in plaintiff's apartment in upper Manhattan. At

---

[1] Although the Order of Reference entered in this matter on March 23, 2014 referred only a specific dispute to me, a second Order of Reference, entered on April 24, 2014, has expanded the reference to include the disputes addressed herein.

approximately 6:00 a.m., plaintiff was awakened by loud banging, presumably by the individual defendants, on the apartment's door. Although it is unclear whether plaintiff let the individual defendants into the apartment or the individual defendants entered the apartment without plaintiff's permission, plaintiff alleges that the police officers entered the apartment, drew their guns and pointed them at plaintiff. Plaintiff alleges that although he prostrated himself on the floor as a sign of submission, the police allegedly stepped on plaintiff's back and limbs and kicked plaintiff in the head, ribs, stomach, chest, legs and arms. Plaintiff alleges that despite the fact that he did not resist the police and that he verbally advised the police he was not resisting, the beating lasted approximately one to two minutes. Plaintiff goes on to claim that when he asked the defendants to stop their assault, one of them hit him in the head with a "ballistic shield," damaging plaintiff's right eye and opening a wound on plaintiff's head. Plaintiff states that he was arrested after the beating and taken to a hospital where his head wound was closed with nine stitches. Plaintiff claims that as a result of the assault, he now experiences daily headaches that require ongoing treatment and impair his ability to perform his daily activities. Plaintiff further alleges that he now

suffers from seizures and convulsions and must now take anti-seizure medicine to control those conditions.

The operative pleading -- plaintiff's Second Amended Complaint -- is facially ambiguous as to whether it seeks damages for false arrest and excessive force or damages for excessive force only.  For example, the Second Amended Complaint contains details such as the length of time plaintiff was in custody, the outcome of the charges against him and seeks damages for the alleged violation of plaintiff's right to be free "from unreasonable seizure of his person, including the excessive use of force" (Second Amended Complaint, dated May 31, 2012 (Docket Item 19), ¶ 30).  These allegations suggest a false arrest claim.

However, in resisting certain of the discovery requests currently in issue, plaintiff unequivocally states that he is seeking damages for the alleged use of excessive force only and that he is asserting no claim for false arrest.  Specifically, plaintiff's counsel states:

> The defendants have a list of Mr. Castro's arrests and a list of the dispositions of those arrests.  They have had the opportunity to question him on those arrests at his deposition.  If Mr. Castro was alleging false arrest, the defendants would no doubt be correct. However, Mr. Castro is advancing an excessive force cause of action and he is seeking to recover no damages from his detention.

(Letter from David B. Rankin, Esq., to the Undesigned, dated April 14, 2014, at 1). In light of this clarification, there is no false arrest claim in the case.

III. <u>Analysis</u>

    A. <u>Applicable Principles</u>

Rule 26 of the Federal Rules of Civil Procedure permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. Rule 26 provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). However, "discovery . . . has ultimate and necessary boundaries" and "discovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)." <u>Oppenheimer Fund Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978) (internal quotation marks omitted). Reasonably calculated means, "<u>any possibility</u> that the information sought may be relevant to [a party's claim or de-

4

fense.]"  Morse/Diesel, Inc. v. Fid. & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (Leisure, D.J.), citing Mallinckrodt Chem. Works v. Goldman, Sachs & Co., 58 F.R.D. 348, 353 (S.D.N.Y. 1973).  If good cause is shown, a court may order discovery of any material that is relevant to the subject matter of the action.  Fed.R.Civ.P. 26(b)(1).

Because impeachment evidence does not bear directly on the parties' claims or defenses, good cause must be shown before discovery of such evidence will be permitted.

> Courts have required parties to establish good cause where discovery is sought solely to unearth potential impeachment material, see, e.g., CSI Investment Partners II, L.P. v. Cendant Corp., No. 00 Civ. 1422 (DAB)(DFE), 2006 WL 1524591, at *2 (S.D.N.Y. May 31, 2006), and have not found such cause where the request is speculative.  See, e.g., Surles v. Air France, No. 00 Civ. 5004 (RMB)(FM), 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001) (no good cause for discovery where request is based on "nothing more than speculative hope that useful impeachment material will be unearthed").  See also Sheppard v. Beerman, No. 91 Civ. 1349 (ILG), 1999 WL 551242, at * 1 (E.D.N.Y. June 25, 1999) (evidence that may impeach "does not, without more, mean that such evidence is discoverable"); Tartaglia v. City of New York, No. 98 Civ. 5584 (JGK)(RLE), 1999 WL 151104, at *2 (S.D.N.Y. Mar. 19, 1999) ("Evidence which may be useful for impeachment purposes is not relevant to the subject matter of the litigation, but involves collateral issues of credibility.").

Dzanis v. JPMorgan Chase & Co., 10 Civ. 3384 (BSJ)(JLC), 2011 WL 5979650 at *6 (S.D.N.Y. Nov. 30, 2011) (Cott, M.J.); accord Nunez

v. City of New York, 11 Civ. 5845 (LTS)(JCF), 2013 WL 2149869 at *9 (S.D.N.Y. May 17, 2013) (Francis, M.J.).

In addition to limiting discovery to relevant evidence, the Federal Rules of Civil Procedure also impose limits on the amount of discovery that can be taken.  For example, Fed.R.Civ.P. 30(a)(2)(A)(i) sets a presumptive limit of 10 depositions per side.  In Sigala v. Spikouris, 00 CV 0983 (ILG), 2002 WL 721078 at *3 (E.D.N.Y. Mar. 7, 2002), the Court set forth the general principles relevant to a party's application to conduct more than ten depositions:

> The Federal Rules presumptively limit the number of depositions that each side may conduct to ten.  See Fed.R.Civ.P. 30(a)(2)(A) ("A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . a proposed deposition would result in more than ten depositions being taken . . . ."); accord Universal City Studios v. Reimerdes, 104 F. Supp. 2d 334, 342 (S.D.N.Y. 2000); Landry v. St. James Parish Sch. Bd., No. Civ. A 99-1438, 2000 WL 1741886, at *2 (E.D. La. Nov. 22, 2000).  The purpose of Rule 30(a)(2)(A) is to "enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery' . . . ." Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995) (citation omitted).  Accordingly, "[t]he mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996).

See also Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc., 05 Civ. 5741 (HB), 2005 WL 3030816 at *1 (S.D.N.Y. Nov. 10,

6

2005) (Baer, D.J.) ("Although a witness might have discoverable information, a party is not always entitled to depose that individual."). The factors relevant to determining whether a party should be entitled to more than ten depositions are now set forth in Fed.R.Civ.P. 26(b)(2)(C) and include whether (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" and (3) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." See generally Gross v. Bare Escentuals, Inc., 03 Civ. 3089 (RLC), 2006 WL 3161386 at *1 (S.D.N.Y. Oct. 30, 2006) (R. Carter, D.J.).

       With the foregoing principles in mind, I shall address the parties' specific discovery disputes.

    B.   Application of the
        <u>Foregoing Principles</u>

        1.   <u>Discovery Sought by Defendants</u>

            a.   Plaintiff's Prior
                 <u>and Subsequent Arrests</u>

Defendants first seek a release from plaintiff permitting them to obtain discovery of plaintiff's prior and subsequent arrests, arguing that "[i]f plaintiff's prior and subsequent arrest records reveal that plaintiff resisted arrest, his credibility regarding his conduct during the search warrant [<u>sic</u>] would be called into question" (Letter from Assistant Corporation Counsel Liza Sohn, Esq., to the Undersigned, dated April 8, 2014 ("Sohn Ltr."), at 2). This argument is contrary to law. Even if I assume that plaintiff resisted arrest on prior occasions, that evidence cannot be offered to show that he resisted arrest on October 29, 2009 -- the date of the events in issue here. Fed.R.Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").[2]

---

[2] Similarly, plaintiff could not offer evidence that he did not resist arrest on other occasions to prove that he did not
(continued...)

If plaintiff were asserting a claim for false arrest, information concerning other arrests would be discoverable as being relevant to damages; a fact-finder could reasonably conclude that a first arrest is more traumatic and results in more mental anguish than subsequent arrests.  See, e.g., Phillips v. City of New York, 871 F. Supp. 2d 200, 207 (E.D.N.Y. 2012); Schiller v. City of New York, 04 Civ. 7922 (KMK)(JCF), 04 Civ. 7921 (KMK)(JCF), 05 Civ. 8453 (KMK)(JCF), 2006 WL 3592547 at *8 (S.D.N.Y. Dec. 7, 2006) (Francis, M.J.).  However, as noted above, plaintiff has expressly stated he is not asserting any false arrest claim here.  Thus, the information bears on neither the nature of plaintiff's conduct on the date in issue nor the plaintiff's recoverable damages.

Plaintiff next argues that the arrest records "may indicate a familiarity with police search warrant procedures and an intent to obstruct entry" (Sohn Ltr. at 3).  The amount of force the arresting officers were permitted to use was, in large part, dependent on plaintiff's conduct after the police entered the apartment.  See Graham v. Connor, 490 U.S. 386, 396 (1989).  The problem with this aspect of defendants' argument is that, as

---

[2](...continued)
resist arrest on the date in issue in this case, nor could he show that the arresting officers may have used excessive force on other occasions to prove they used excessive force here.

a matter of logic, familiarity with search warrant procedure does not make it more likely or less likely that an individual will resist arrest, and defendants offer no evidence that plaintiff barricaded his door or took other unusual steps to frustrate entry.[3]  And, in any event, the issue in this case is not whether plaintiff obstructed the entry to his apartment; the issue is whether force was used to effect plaintiff's arrest and, if so, whether plaintiff's conduct at the time of his arrest justified the amount of force used.  Even if plaintiff's door were made out of armored steal, that fact, without more, would not justify the beating plaintiff alleges.

   Defendants' third argument is that records may contain information relevant to plaintiff's damages if they contain information concerning injuries from prior or subsequent arrests.  This argument is persuasive, and plaintiff is, therefore, directed to sign a release authorizing the disclosure of any portion of any arrest report relating to physical injuries.

---

    [3]Defendants state in their letter that plaintiff admitted "that he fortified his door after police executed a warrant earlier [in the] month. (Pl. Dep. Tr. 39:6-20)" (Sohn Ltr. at 3).  The vagueness of this statement prevents it from being an adequate basis for the discovery sought.  The execution of many search warrants results in doors being broken or knocked off their hinges.  If plaintiff's testimony merely establishes the repair of such damage, it hardly constitutes evidence of an intention to impede law enforcement officers.  Defendants proffer no evidence that the door was "fortif[ied]" in some unusual way.

        b.   <u>Probation Records</u>

     Defendants also seek an order compelling plaintiff to execute a release to permit disclosure of plaintiff's probation file.  Defendants state that plaintiff was on probation at the time of his arrest, and, therefore, "his [probation] records are relevant to show plaintiff may have had a motive to conceal evidence and resist arrest" (Sohn Ltr. at 3).  Defendants also claim that the file is necessary to enable them to identify the court file of the New Jersey prosecution that lead to the conviction underlying the sentence of probation and that the probation file may contain information relevant to plaintiff's medical condition.

     To the extent defendants argue that plaintiff's status as a probationer resulted in an enhanced incentive to resist arrest or conceal evidence, their argument is, again, illogical.  A probationer has an incentive to cooperate with the police because contrary conduct can result in a violation of probation.  To the extent defendants claim that plaintiff's status as a probationer gave plaintiff an enhanced incentive to resist arrest or to conceal evidence, their argument does not justify the release of the probation file itself.  To be sure, given the enhanced sentences that can be imposed on recidivists, any

individual with a prior conviction may have an incentive to avoid a second conviction.  However, to the extent that this inference can be drawn, it is drawn from the fact of the prior conviction -- not from the material in the probation file.  Defendants are already aware of the prior conviction and the sentence of probation, and they have not explained what incremental probative information they might obtain from the probation file itself.

To the extent the probation file contains information identifying the conviction that gave rise to the sentence of probation or information concerning plaintiff's medical condition, defendants have stated valid grounds for disclosure and plaintiff will be directed to sign a release authorizing the release of those two portions of his probation file.

### c. Out-of-State Arrest Records

Defendants also seek a "so ordered" subpoena for plaintiff's out-of-state arrest records (Sohn Ltr. at 3).  These documents are largely irrelevant for the reasons set forth above in Section III(B)(1)(a).[4]

---

[4]Defendants attempt to support their discovery requests by claiming that plaintiff has sought discovery as if a false arrest claim has been asserted and has even gone so far as to seek the disciplinary histories of te individual defendants.  There are
(continued...)

2. <u>Discovery Sought by Plaintiff</u>

    a. <u>Plaintiff's Request
for Additional Documents</u>

I have been advised by defendants' counsel that this issue has been resolved by agreement and that judicial intervention is no longer necessary.

    b. <u>Plaintiff's Request
for Six Additional Depositions</u>

Although plaintiff has already conducted 12 depositions, he seeks to take six more.

First, plaintiff seeks three additional members of the Emergency Services Unit ("ESU") that entered his apartment; plaintiff has already deposed six of the ESU team members who entered his apartment. Of these three additional members that plaintiff now seeks to question, defendants' counsel represents

---

[4](...continued)
several answers to this argument. First, if plaintiff has sought overbroad, irrelevant discovery, defendants' remedy is to seek a protective order, not to retaliate by seeking similarly overbroad discovery that goes beyond what is permitted by the Federal Rules of Civil Procedure. Second, discovery is rarely symmetrical because the issues a plaintiff has to prove are frequently different from the issues a defendant has to address. The complaint asserts claims alleging a failure to train and a failure to supervise; such claims appear to make the individual defendants' disciplinary history relevant. There is no similar allegation that would make plaintiff's arrest records relevant.

that one was never in plaintiff's apartment. Plaintiff claims that testimony from the other two ESU team members is necessary to establish his injuries. Plaintiff also seeks to depose the two ESU officers who transported plaintiff to the hospital for the same purpose.

      I conclude that none of these five depositions is warranted. The testimony that would result from these depositions would be largely duplicative of the depositions of ESU team members already conducted. In addition, there are more efficient and more authoritative methods to establish plaintiff's injuries. As noted above, plaintiff was taken to hospital after his arrest where he alleges his head would was closed with nine stitches. The medical records from the hospital are sufficient to establish plaintiff's injury and are particularly probative because they originate from a disinterested source.

      The remaining witness that plaintiff seeks to depose is Lieutenant Lee. According to plaintiff, Lee was the highest ranking officer on the scene on the date in issue, had operational responsibility for everything that happened on that day and prepared the search warrant execution plan (Letter of David B. Rankin, Esq., to the Undersigned, dated April 11, 2014, at 4). Assuming the truth of these representations, plaintiff has still not shown an adequate basis for taking his deposition. The issue

in this case is the amount of force used during the arrest of plaintiff.  Despite the documents produced to date, plaintiff cites no evidence connecting the search warrant execution plan to the allegedly excessive force used against plaintiff.  For all that appears in the parties' submissions, whatever happened during the course of plaintiff's arrest was a spontaneous event.  In light of this apparent circumstance, the testimony of the author of the search warrant execution plan would add nothing of probative value.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, plaintiff is directed to execute a document authorizing the release to defendants' counsel of (1) of any portion of any arrest report relating to  his physical injuries, and (2) those portions of plaintiff's probation file, if any, that contain information identifying the conviction that gave rise to the sentence of probation or information concerning plaintiff's medical condi-

tion. In all other respects, the parties' applications to compel discovery is denied.

Dated: New York, New York
       April 30, 2014

                                        SO ORDERED

                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

David B. Rankin, Esq.
Rankin & Taylor
Suite 914
11 Park Place
New York, New York  10007

Liza Sohn, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York  10007